IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION


GARY EYE,                               )
                                        )
                    Movant,             )
                                        )
vs.                                     )          Case No. 11-1130-CV-W-ODS
                                        )          Crim. No. 05-00344-01-CR-W-ODS
UNITED STATES OF AMERICA,               )
                                        )
                    Respondent.         )


ORDER AND OPINION DENYING MOTION FOR POSTCONVICTION RELIEF

I.   BACKGROUND


        Movant was indicted on eight counts of a nine-count Indictment.   He was charged
with: two counts of interfering with a federally protected activity,[1] three counts of using or
discharging a firearm during a crime of violence, witness tampering, obstruction of justice,
and using a firearm to commit a felony.   The charges stem from a series of incidents that
began on the evening of March 8, 2005, and ended the following morning.   In summary,
Movant and his co-defendant, Steven Sandstrom, set out to find and shoot an
African-American.   While driving around the streets of Kansas City, Sandstrom, McCay,
and Regina Rios happened upon William McCay, an African-American who was walking
down 9th Street on his way to work.   Movant and his companions did not know McCay,
but he satisfied the objectives of their search.

        Evidence introduced at trial demonstrated Sandstrom drove to the end of an alley
between 8th and 9th Street, and Movant shot at McCay from the car.   Sandstrom drove
around the block to approach McCay's location from another direction, but McCay was no
longer there.   Sandstrom then drove around the area as the car's occupants continued
looking for McCay; they spotted him near 9th Street and Brighton.   Movant got out of the

_____
        [1]The federally protected activity at issue was the victim's right to use the public
streets and sidewalks without being subjected to discrimination based on his race.

car, still armed with the gun he had used to shoot McCay.   Movant and McCay struggled, and Movant shot McCay.   The trio then sped away.   McCay died from the gunshot wounds.

The jury convicted Movant of all eight counts with which he was charged, and convicted Sandstrom of seven of the nine counts with which he was charged.   The jury declined to impose the death penalty as to Eye, and the Government withdrew its effort to seek the death penalty as to Sandstrom.   Both defendants were sentenced to life imprisonment and their convictions were affirmed on direct appeal.   United States v. Sandstrom, 594 F.3d 634 (8th Cir. 2010).   The Supreme Court denied Eye's and Sandstrom's Petitions for Writ of Certiorari in separate orders, both of which were issued on October 4, 2010.   See 131 S. Ct. 192 (2010).

This motion seeking postconviction relief was initiated in November 2011.   The Government filed its response in January 2012.   Movant then requested multiple extensions of time to file his Reply Suggestions, and after the third request was granted he filed (in August 2012) an Amended Motion for Postconviction Relief, which was construed as an attempt to add claims to his original motion.   See Order dated September 19, 2012 (Doc. # 18).   This necessitated a new round of briefing that was delayed for a variety of reasons, including requests for extensions and difficulties occasioned by the Court's filing of Movant's submissions.   See Orders dated October 24, 2012 (Doc. # 19) and January 16, 2013 (Doc. # 22).   These difficulties were remedied when Movant resubmitted the additional claims in January 2013, and the matter was fully briefed on April 26, 2013, when Movant filed his Reply Suggestions.

After considering the parties' arguments and the Record, the Court denies the request for postconviction relief.   A hearing is not necessary because the issues Movant has raised can be addressed based on the current Record.   Additional details about the crimes and the earlier proceedings will be discussed as they become relevant to the issues Movant has raised.

## II.   DISCUSSION

### A.   Timeliness

The Government argues the motion should be denied because it is untimely. Absent circumstances that are not alleged to apply in this case a motion for postconviction relief must be filed within one year of the date on which the judgment of conviction becomes final.   28 U.S.C. § 2255(f)(1).   The Government argues Movant's conviction became final – and the one year clock began – when the Supreme Court declined to issue a Writ of Certiorari on October 4, 2010.   Cf. Campa-Fabela v. United States, 339 F.3d 993, 993-94 (8th Cir. 2003) (per curiam) (criminal conviction is final on date Supreme Court declines to issue a Writ of Certiorari).

Application of the "prison mailbox rule" first recognized in *Houston v. Lack*, 487 U.S. 266 (1988) means that the motion had to be placed in the prison mail system on or before October 4, 2011 to be timely. Unfortunately Movant does not allege the date he placed the motion in the prison mail system.   He purports to have signed the motion on July 27, 2011, and the postmark on the envelope is November 1, 2011.   Clearly, Movant placed the motion in the prison mail system sometime between July 27 and November 1, but nothing in the Record provides a specific date or a narrower time frame.

The Court also notes Movant has sought relief for delays that were beyond his control.   These efforts are significant because the one-year limit is a statute of limitations and not a jurisdictional prerequisite, so it is subject to equitable tolling when the movant "can show that (1) he has been diligently pursuing his rights and (2) an extraordinary circumstance stood in his way."   White v. Dingle, 616 F.3d 844, 847 (8th Cir. 2010).   In this case, Movant has complained that trial counsel was not cooperative in providing him with materials from the trial.   Egregious misconduct on an attorney's part may qualify as exceptional circumstances.   United States v. Martin, 408 F.3d 1089, 1093-94 (8th Cir. 2005).   Movant has also claimed that at various times the prison in which he has been held has been under a lockdown, which prevented him from completing his motion in a timely manner.   If this representation is true and the actions of prison officials kept him

from completing his motion, this circumstance could also justify equitable tolling.  Cf.
Flanders v. Graves, 299 F.3d 974, 977 (8th Cir. 2002) (equitable tolling can be justified
"when some fault on the part of a defendant has caused a plaintiff to be late in filing, or
when other circumstances, external to the plaintiff and not attributable to his actions, are
responsible for the delay.").

Movant has arguably advanced factual predicates that might justify equitable
tolling, but the Court does not know whether the factual predicates are true.   Determining
their truth or falsity would require a hearing to determine (1) when Movant placed the
motion in the prison mail system, (2) what his attorneys did after the conviction was final,
and (3) any effects from the prison being locked down.   Granting a hearing would
significantly delay the ultimate resolution of this matter.   On the other hand, the Court has
determined Movant's claims for relief lack merit.   Judicial economy justifies the Court's
decision to address the motion's merits and avoid the lengthy process of resolving the
procedural issue.   E.g., Burkhalter v. United States, 203 F.3d 1096, 1087 (8th Cir. 2000)
(citing Barrett v. Acevedo, 169 F.3d 1155, 1162 (8th Cir.) (en banc), cert. denied, 528 U.S.
846 (1999)).   The Court's election to reach the merits should not be construed as a
holding that (1) Movant's description of events is accurate or (2) Movant's description of
events, if true, would justify equitably tolling the one year limitation period.


## B.   The Initial Seven Grounds for Relief


Movant presented seven grounds for relief in his initial filing.   For ease of
discussion, the Court will address these grounds separately from those that were deemed
to be added by his amendment.

As a prelude to its discussion, the Court notes that most of Movant's claims have
been procedurally defaulted, either because they were not raised at the trial level or
because they were not raised on appeal.   However, a postconviction proceeding cannot
serve as a substitute for a direct appeal.   E.g., Charboneau v. United States, 702 F.3d
1132, 1136 (8th Cir. 2013).   Movant generally (and repeatedly) alleges his attorneys were
ineffective for each and every failing he has alleged in this matter.   Ineffective assistance

of counsel can serve as grounds for overcoming the procedural default: it requires demonstrating that "'counsel's performance was so deficient as to fall below an objective standard of reasonable competence, and that the deficient performance prejudiced his defense.'" <u>Nave v. Delo</u>, 62 F.3d 1024, 1035 (8th Cir. 1995), <u>cert. denied</u>, 517 U.S. 1214 (1996) (quoting <u>Lawrence v. Armontrout</u>, 961 F.2d 113, 115 (8th Cir. 1992)).   This analysis contains two components: a performance prong and a prejudice prong.

> Under the performance prong, the court must apply an objective standard and "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance,"   <u>Strickland</u>, 466 U.S. at 690, while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions.   <u>Id</u>. at 689.     Assuming the performance was deficient, the prejudice prong "requires proof 'that there is a reasonable probability that, but for a counsel's unprofessional errors, the result of the proceeding would have been different."   <u>Lawrence</u>, 961 F.2d at 115 (quoting <u>Strickland</u>, 466 U.S. at 694).

<u>Id</u>.   Failure to satisfy both prongs is fatal to the claim.   <u>Pryor v. Norris</u>, 103 F.3d 710, 713 (8th Cir. 1997) (no need to "reach the performance prong if we determine that the defendant suffered no prejudice from the alleged ineffectiveness"); <u>see also</u> <u>DeRoo v. United States</u>, 223 F.3d 919, 925 (8th Cir. 2000).   To the extent the alleged ineffectiveness occurred on direct appeal, Movant must also overcome the "particularly deferential" view afforded to appellate counsel's decisions, keeping in mind that effective appellate counsel will eliminate relatively weaker arguments in favor of stronger ones. <u>Charboneau</u>, 702 F.3d at 1136-37.

At times, the Court's discussion of the issues may appear to be an independent review of the merits.   Those discussions are intended to demonstrate the arguments are so devoid of merit that <u>Strickland</u>'s prejudice prong was not violated or that counsel did not violate <u>Strickland</u>'s performance prong by failing to raise the issue in question.

## 1.   Double Jeopardy

Movant contends his convictions violated the Constitution's prohibition against double jeopardy.   In explaining this theory, however, Movant includes arguments that have nothing to do with double jeopardy, most notably arguments regarding inconsistency of the verdicts and alleged denials of his speedy trial rights.

### (a)   Cooperation of State Authorities

Movant argues that the involvement of Missouri and Kansas authorities somehow violated his rights and cites *Bartkus v. Illinois*, 359 U.S. 121 (1959) as support.   Bartkus held that a defendant who was acquitted in a federal prosecution for bank robbery could be prosecuted by state authorities for crimes arising from the same robbery without violating the Double Jeopardy Clause.   Bartkus is inapplicable here for at least two reasons: (1) Bartkus did not describe a situation where the Double Jeopardy Clause was violated and (2) the case at bar did not involve a subsequent or prior state prosecution. There is not even a colorable argument, so there is no basis for overcoming the procedural default.

### (b)   Multiplicitous/Duplicitous Counts

Movant contends some of the counts were "mulitplicitous and duplicitous." However, this argument was raised on direct appeal and rejected; in fact, it received significant attention from the Court of Appeals.   Sandstrom, 594 F.3d at 651-60. Inasmuch as the claim was actually presented on appeal, it cannot be presented again in this proceeding.

Movant and Sandstrom were indicted on September 29, 2005.   A Superseding Indictment was returned on May 17, 2006.   Movant argues that the Superseding Indictment "was barred by the doctrine of collateral estoppel where [Movant] and his codefendant were not tried on the First Indictment pursuant to the Speedy Trial Act." The Speedy Trial Act requires a defendant be brought to trial within seventy days of the date of indictment, 18 U.S.C. § 3161(c)(1), but excludes certain time periods from that calculation.   Id. § 3161(h).   In particular, time for continuances are excluded if the judge granting the continuance concludes the ends of justice are supported by granting the request.   Id. § 3161(h)(7)(A).   The Record reflects that Movant requested a continuance on November 14, 2005, and the trial was continued to June 19, 2006.   The Superseding Indictment was returned during that time period, so the Speedy Trial Act was not violated and the predicate for Movant's argument is nonexistent.

Within this argument, Movant also reiterates an issue involving alleged eavesdropping of attorney/client conversations by the Government.   This issue was raised in a Motion to Dismiss; an evidentiary hearing was held, and the Court concluded Movant waived any attorney/client privileges that may have existed and there was no Sixth Amendment violation.   Appellate counsel could reasonably decide that in light of the Court's factual findings this claim was weaker than others that could have been (and were) raised.

## (d)   Inconsistent Verdicts

Movant argues that because Sandstrom was acquitted on Counts I and II, he also must be acquitted because a person cannot aid and abet themselves.   Eye ignores the fact that he was found guilty based on his own actions – which included personally shooting the gun at McCay.   His argument is frivolous, so Strickland was not violated by the trial counsel's failure to raise the issue.

*(e) and (f)   Consecutive Sentences*

Movant argues that the imposition of consecutive sentences violates the Double Jeopardy Clause or is otherwise unlawful.   This argument is meritless because each crime was separate and distinct, <u>e.g.</u>, <u>United States v. Honken</u>, 541 F.3d 1146, 1156 n.10 (8th Cir. 2008), <u>cert. denied</u>, 558 U.S. 1091 (2009); <u>United States v. Gladfelter</u>, 168 F.3d 1078, 1084 (8th Cir. 1999), and trial counsel was not ineffective for failing to raise this argument.   The argument fares no better when Movant focuses on the special assessments imposed.   <u>See</u> <u>United States v. Robertson</u>, 606 F.3d 943, 952 (8th Cir. 2010).

## 2.   Eighth Amendment

Movant argues that his prosecution and incarceration constitutes cruel and unusual punishment because he and Sandstrom were selectively prosecuted for a hate crime while numerous African-Americans are not similarly charged for killing Caucasians. The Court does not believe anything needs to be said to explain why this contention is frivolous and trial counsel was not ineffective for raising it.

## 3.   Factual Innocence

Under this heading, Movant reiterates the prior argument about his legal inability to aid or abet himself.   This issue has been previously addressed and further discussion is not warranted.

Movant also argues there insufficient evidence to support his convictions.   The voluminous record provides ample justification for counsels' decision not to raise this issue on appeal (at least, not beyond the extent to which the issue was raised.   <u>See</u> <u>Sandstrom</u>, 594 F.3d at 664-65).   Movant's arguments are also legally flawed, in that they demand a particular federal nexus that is not required of the statutes he was charged

with violating.   For instance, (1) the charge of shooting and killing McCay to prevent him from reporting the first shooting did not require proof that McCay would have reported to any specific federal officials and (2) the charge of using fire to commit a felony did not require proof that the object burned traveled in interstate commerce.   With regard to the first example, Movant relies on the Supreme Court's subsequent decision in Fowler v. United States, 131 S. Ct. 2045 (2011), but the jury instructions (notably Instruction No. 39) was consistent with Fowler's holding.   131 S. Ct. at 2052 ("the Government must show that the likelihood of communication to a federal officer was more than remote, outlandish, or simply hypothetical.").   The latter example relies on Jones v. United States, 529 U.S. 848 (2000), but that case provides no support because it involved a conviction under 18 U.S.C. § 844(i), whereas Movant was convicted for violating 18 U.S.C. § 844(h).

## 4.   Violation of the Interstate Agreement on Detainers

Movant argues the Government violated the Interstate Agreement on Detainers by failing to obtain a Writ of Habeas Corpus ad prosequendum and failing to appoint counsel for him.   The Record belies this claim.   The Indictment was filed on September 29, 2005.   On October 3, 2005, the Government sought a Writ of Habeas Corpus.   The writ was issued on October 6, 2005.   An initial appearance occurred on October 11, 2005, at which time Movant was advised of his right to counsel.   The Magistrate Judge presiding over the proceeding appointed counsel for Movant.   There is no factual predicate for the claim, and trial counsel could not be ineffective for failing to raise it.

## 5.   Sufficiency of the Indictment

Movant contends the Indictment and Superseding Indictment were defective for failing to contain a variety of factual allegations.   Trial counsel were not ineffective for failing to raise these arguments because they lack a legal basis.   For instance, Movant complains that Count I failed to allege Movant acted intentionally – but Count I in both the

Indictment and the Superseding Indictment alleged Movant acted willfully, which is the correct mental state for the crime charged. Movant's remaining arguments under this heading are even more frivolous than this one and require no further discussion.

### 6.   Denial of Speedy Trial Rights

In an expansion of the argument discussed in Part II(B)(1)(c) above, Movant argues his speedy trial rights were violated. It is true that his trial took place more than seventy days from his initial indictment, but Movant has not excluded the time that was attributable to motions filed by him and Sandstrom. The claim lacks merit, and trial counsel was not ineffective for failing to raise it.

### 7.   Ineffective Assistance of Counsel [2]

Movant presents a series of generalized complaints about his attorneys' actions and failings, but the generalized complaints present nothing for the Court's consideration. Movant reiterates his contention about the Government eavesdropping on his communications with counsel and claims this diminished his attorneys' effectiveness. This argument is belied by the Court's previous order finding that Movant waived any attorney-client privilege that may have existed in his phone calls to his attorney. Movant also contends trial counsel was ineffective for failing to call Sandstrom to the stand, but Sandstrom made clear his intent to invoke his Fifth Amendment right to remain silent. Counsel was not ineffective for failing to call Sandstrom to the stand under these circumstances.

---

[2]This is labeled as Ground Eight in the Motion, but there is no Ground Seven.

<u>C. The Additional Eight Claims</u>

<u>*1. Double Jeopardy*</u>

Movant argues his convictions on Count VII and Count VIII violated the Double Jeopardy Clause because one is a lesser-included offense of the other. This particular argument has been rejected by the Eighth Circuit, which previously has held "Congress intended 18 U.S.C. § 844(h) to allow prosecution for both the crime of using fire to commit a felony, and the felony itself." <u>United States v. Ihmoud</u>, 454 F.34d 887, 895 (8th Cir. 2006). Trial counsel's failure to present this argument did not prejudice Movant.

This ground also presents issues that are encompassed within his earlier Double Jeopardy arguments. Those arguments are rejected for the reasons previously stated.

<u>*2. Composition of Grand Jury and Petit Jury, Exclusion From Jury Assembly Room, Improper Jury Instructions, and Jury Issues*</u>

This ground presents a variety of arguments. Movant first complains that he "has never seen the statistics that were used to elect individuals for Jury duty." He does not allege that any violation of the Sixth Amendment occurred, and his lack of knowledge will not substitute for such a violation. Regardless, it is practically impossible that such a claim would have been successful even if trial counsel had advanced it. The jury pool is comprised of people living in this judicial district who are registered to vote or possess drivers' licenses. "To demonstrate the existence of systematic exclusion, a defendant must prove unfair underrepresentation of the excluded group on his venire and in general on other venires in the relevant judicial system near the time of his trial." <u>Singleton v. Lockhart</u>, 871 F.2d 1395, 1398 (8th Cir. 1989). As a general proposition, the use of voter registration lists has been approved as a constitutional means of forming jury pools, even if such an approach leads to the underrepresentation of a particular group. <u>Roberson v. Hayti Police Dep't</u>, 241 F.3d 992, 997-97 (8th Cir. 2001); <u>Floyd v. Garrison</u>, 996 F.2d 947, 949 (8th Cir. 1993). Movant asserts "[t]here were no Native Americans, young people or

Latino African[s] who could relate to" him.   It is not clear whether Movant alleges this to be the case with respect to the entire jury pool, the jurors brought in for selection, or the petit jury that actually returned a verdict.   Regardless, his assertion – even if true – is insufficient to suggest a constitutional violation may have occurred.

Movant next complains about procedures employed while jurors completed questionnaires.   Prior to the commencement of trial, approximately 360 jurors were summoned to the courthouse to complete a questionnaire.   At the Court's request, the parties proposed what eventually became a questionnaire of nearly thirty pages in length. The parties briefed various matters related to this process, which were addressed in an Order issued by Magistrate Judge Robert E. Larson on October 15, 2007.   In that Order, Judge Larsen rejected Movant's plan for both Defendants to be present in the jury assembly room when the jurors commenced completion of their questionnaires and then leave at a recess.   Judge Larsen also denied Movant's alternative request that if Defendants could not be in the jury assembly room, then no attorney or member of the public should be present.   Judge Larsen directed that members of the public would be excluded, but "counsel may be present at their discretion but will simply be observers, they will not be introduced to potential jurors."   Judge Larsen's Order was not appealed. After the questionnaires were completed, the parties jointly agreed that 142 of the 344 jurors could be excused for cause or hardship.   <u>See</u> Order dated January 7, 2008.   The Court denied the Government's motion to strike additional jurors based solely on the answers to the questionnaire, explaining that it would be "imprudent" to do so in the absence of an agreement from the parties and it was "better to err on the side of caution and have the jurors in question available to expand, explain or refine their answers in person than to delve into the meaning [or] import of their answers."   Order dated April 7, 2008.   Jury selection took place over the course of three days.   Both defendants and their attorneys were present during jury selection, and the attorneys were permitted to introduce themselves, their clients, and their assistants.   After the Court asked general questions the attorneys were permitted to pose additional questions.   Each large group was then broken into smaller groups, and the attorneys had an opportunity to ask additional questions.

A criminal defendant has the right to be present at all critical phases of the trial, but not everything in connection with a criminal trial requires the defendant's presence. The right does not extend to those events where the defendant's presence is useless. E.g., United States v. Moe, 536 F.3d 825, 830 (8th Cir. 2008) (citing Kentucky v. Stincer, 482 U.S. 730, 745 (1987)). Having Movant present to watch jurors write their answers on a questionnaire would not have accomplished anything. "When there is no indication the defendant could have done or gained anything had he attended . . . there is no due process violation." Middleton v. Roper, 455 F.3d 838, 852 (8th Cir. 2006), cert. denied, 549 U.S. 1134 (2007). Movant also contends this procedure violated the media's right to be present at a public proceeding. Assuming Movant has standing to assert this argument, he suffered no prejudice. Finally, the entire procedure adequately safeguarded Movant's rights. Had the Court sent the questionnaire to the jurors via mail (as has been done in other cases), neither Movant nor the press would have been present. No juror was struck based on the answers to questionnaires absent Movant's consent. Movant and his attorney were present for all face-to-face questioning. Cf. Kontakis v. Beyer, 19 F.3d 110, 118 (3d Cir.), cert. denied, 513 U.S. 881 (1994) (holding that similar procedures did not violate Sixth Amendment or Due Process Clause). The decision not to appeal Judge Larsen's ruling (or to further press the issue on appeal to the Eighth Circuit) was reasonable and did not constitute ineffective assistance.

The next arguments under this heading relate to jury instructions. Given the procedural posture, the Court construes these arguments as contending trial counsel was ineffective for failing to raise these objections. However, the objections Movant raises are frivolous, and counsel was not ineffective for failing to raise them:

- Movant contends the instructions were infirm for omitting one "that states the Government must prove [r]acism by Defendants, are involved in some type of racial movement, or [at] the very least proof of some type of racism." Doc. # 24 at 7. This is not a correct statement of law, so such an instruction would have been inappropriate.

- Movant contends Instruction 11B should not have been given because no conspiracy was charged. While it is true that Movant was not charged with

13

conspiracy, it is also true the jury was not told to consider whether Movant was guilty of participating in a conspiracy.   Instruction 11B properly told the jury how to evaluate statements made by the two defendants, and its propriety did not depend on the existence of a formal charge of conspiracy.   E.g., United States v. Skidmore, 254 F.3d 635, 638 (7th Cir. 2001); United States v. Barksdale-Contreras, 972 F.2d 111, 114-15 (5th Cir. 1992), cert. denied, 506 U.S. 1084 (1993); United States v. Beckham, 968 F.2d 47, 51 n.2 (D.C. Cir. 1992); United States v. Ortiz, 966 F.2d 707, 714-15 (1st Cir. 1992), cert. denied 506 U.S. 1063 (1993); United States v. Layton, 855 F.2d 1388, 1398 (9th Cir. 1988), cert. denied, 489 U.S. 1046 (1989).

- Some of the witnesses testified after reaching various agreements with the Government with respect to pending charges.   Movant contends there was not a "true immunity instruction."   He does not explain what such an instruction should have said, nor does he explain why Instructions 21 and 22 – which addressed this issue – were inadequate.

- Instruction 23 listed witnesses who were accused of crimes and told the jury they could consider that evidence "only to help . . . decide whether to believe the witnesses and how much weight to give their testimony."   Movant contends three witnesses with prior convictions were not mentioned in Instruction 23.   However, Movant offers nothing to establish these three witnesses had prior convictions. More importantly, no evidence was presented to the jury that any of the three witnesses in question were previously convicted of a crime – so there was no basis for including them in Instruction 23.

- Movant reasserts his argument relying on Fowler v. United States, this time attacking the jury instructions related to Counts V and VI.   As mentioned in Part II(B)(3), while Fowler was decided after Movant was convicted, the jury instructions were consistent with the Supreme Court's holding.   In any event, Movant does not explain how or why his attorney should have anticipated Fowler.

The final arguments under this heading relate to juror issues.   Movant's first issue relates to Juror Wood, who was originally an alternate juror but deliberated with the jury

14

because another juror (Juror Janacaro) had been excused.   Before addressing the issues related to Juror Janacaro (and in anticipation of Juror Wood becoming a member of the panel), the Court noted Juror Wood "napped yesterday and on two or three occasions today I've noticed that he was not paying attention, had his eyes closed.   And I assume he was napping."   Tr. at 1250.   Upon inquiry, Juror Wood explained that he was suffering from a cold that had interfered with his sleep.   He was admonished to make a greater effort to sleep that evening.   Tr. at 1258-60.   No objection was made to allowing Juror Wood to continue serving as a juror, and there were no more issues with regard to Juror Wood.   Movant contends he was deprived of a fair trial, but the real question is: did trial counsel violate <u>Strickland</u> by failing to object?   The Court concludes no violation occurred.   "If sleep by a juror makes it impossible for that juror to perform his or her duties or would otherwise deny the defendant a fair trial, the sleeping juror should be removed from the jury.   However a court is not invariably required to remove sleeping jurors, and a court has considerable discretion in deciding how to handle a sleeping juror." <u>United States v. Freitag</u>, 230 F.3d 1019, 1023 (7th Cir. 2000); <u>see also</u> <u>United States v. McKeighan</u>, 685 F.3d 956, 973-74 (10th Cir.), <u>cert. denied</u>, 133 S. Ct. 632 (2012). Satisfying <u>Strickland</u>'s prejudice prong requires Movant to demonstrate that Juror Wood's sleeping affected Movant's right to a fair trial by demonstrating, for instance, that the length of time Juror Wood was asleep and the portions of the trial he slept through effectively deprived Movant of his right to a fair and impartial jury.   <u>McKeighan</u>, 685 F.3d at 974; <u>Freitag</u>, 230 F.3d at 1023.   All Movant has done is demonstrate Juror Wood was sleeping, but this is insufficient to demonstrate the violation of his rights or, more importantly, that <u>Strickland</u>'s prejudice prong was violated.

Movant's final juror-related issue involves Juror Janacaro, who he describes as having been dismissed "out of concern for [his] life" and two other jurors heard him expressing these concerns.   Movant contends the other jurors should have been dismissed as well.   In rejecting this claim, the Court first notes Juror Janacaro did not say he was concerned about bodily harm.   Reading the relevant portion of the Transcript in its entirety, it appears to the Court (as it did at the time) that Juror Janacaro thought he recognized some non-witnesses in the gallery and was concerned that his involvement as

a juror might affect his ability to attract or retain customers for his insurance business. Tr. at 1187-1190, 1249-58.   Juror Janacaro specifically denied feeling threatened.   Tr. at 1256.   He identified one juror – Juror Bielawski – as possibly having heard some of his comments indicating that he might know one of the spectators.   Tr. at 1252-53.   As the resolution of Juror Janacaro's status occurred at the end of the day, the Court expressed its intent to inquire of Juror Bielawski the following morning.   Tr. at 1258.

The next morning, the Court announced Juror Janacaro left a message with the Courtroom Deputy Clerk indicating that he may have also made some comments to Juror Moorefield.   Tr. at 1262.   The Court first inquired of Juror Moorefield, who indicated Juror Janacaro indicated he thought he recognized two spectators in the gallery but did not specify who they were, where they were sitting, or how it was that he thought he knew them.   Tr. at 1262-64.   Upon inquiry from the Court, Juror Bielawski stated that he did not hear Juror Janacaro discussing the matter.   Tr. at 1264-65.   Nobody asked that Juror Moorefield or Juror Bielawski be excused.   The failure to raise an objection with respect to either juror does not violate either Strickland prong.   With respect to Juror Bielawski, the fact that he did not hear any of Juror Janacaro's statements obviates any possible basis for seeking his removal.   With respect to Juror Moorefield, Movant does not identify anything in the Record that could have prompted an objection, much less one that had any potential merit.


### 3.   Lack of a Language Expert


In Movant's words, this issue arises because "[t]he government repeatedly asked every witness about the meaning of the words Nigga and Nigger."   He contends the Court violated his rights by denying his request to elicit testimony from a "language expert," who apparently would testify about how these terms are used by others.   This is an apparent reference to the Court's April 23, 2008, Order, which held such evidence was inadmissible.

While it is true that several witnesses were asked to distinguish between these terms, the witnesses were asked to explain any differences in the way they used and

perceived these terms. The questions, as phrased, were not amenable to expert testimony. Appellate counsel was not ineffective for deciding this was a relatively weak claim and therefore not worthy of being raised on appeal.

### 4. *Brady Issues, Witness Matters, and Other Miscellaneous Claims*

As the heading suggests, Movant has here collected a myriad of unrelated claims. Movant first presents several complaints about evidence that the Government supposedly did not provide to him; although he does not cite the case by name, this misconduct (if it occurred) might violate Brady v. Maryland, 373 U.S. 83 (1963). Brady and its progeny describe circumstances in which the Government is required to disclose evidence to the accused. "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Morales v. Ault, 476 F.3d 545, 554 (8th Cir.), cert. denied, 552 U.S. 873 (2007). Prejudice exists if the undisclosed evidence undermines confidence in the verdict, Strickler v. Greene, 527 U.S. 263, 290 (1999), or creates a reasonable probability that the verdict would have been different. Morales, 476 F.3d at 554. The prosecution's good faith (or bad faith) does not matter. E.g., Kyles v. Whitley, 514 U.S. 419, 432 (1995).

The problem is that much of Movant's argument focuses on matters that do not constitute evidence. He contends the Government destroyed notes of interviews, but the Record reflects that what he describes as "interviews" were really meetings to prepare for trial and no reports were made. Tr. at 1023-24. He claims the Government failed to disclose that it "intimidated key prosecution witnesses," but there is no explanation of what Movant refers to as "intimidation" and the Court's independent review of the Record fails to add any meaning. To the extent this claim relates to threats of prosecution that were obviated by plea agreements with witnesses, the Record reflects that this information was known to (and used by) Movant. He contends the Government failed to disclose that the Government "illegally questioned minors without consent by legal guardians or parents," but the Record does not reflect that the Government did anything

"illegal," that Movant was unaware of the interviews in question, or that anything Movant complains he did not know (whatever that may be) would constitute favorable evidence.

Movant challenges the Government's decision to reach plea agreements with witnesses, contending the Government "abused its authority by letting go uncharged criminal conduct."   The Court is aware of no legal authority supporting this claim.

Movant complains the Government improperly used grand jury testimony to bolster the testimony of witnesses.   The first of the two cited instances involved questioning from Sandstrom's counsel and no grand jury testimony was presented to the jury.   Tr. at 423.   In the second instance an objection was made and overruled; assuming (without deciding) that the Court's ruling was erroneous, the use of grand jury testimony was so brief that appellate counsel could reasonably decide it did not need to be raised on appeal.   Tr. at 1173-74.   This is particularly true given all of the evidence introduced regarding Ms. Rios' varying statements and the Court's discretion in applying Rule 801(d)(1)(B) of the Rules of Evidence.   See United States v. Nelson, 735 F.2d 1070, 1072 (8th Cir. 1984).

Movant contends the Court erred in not permitting rebuttal testimony on what the parties agreed were collateral issues.   Tr. at 1801-03, 1810-11.   Counsel was not ineffective for failing to appeal the Court's disallowance of collateral evidence.

In what may or may not be another Brady argument, Movant claims the Government violated his constitutional rights by performing a DNA test that consumed all of the genetic material, making it impossible for him to arrange for an independent test. Assuming there is some constitutional issue involved, Movant has not accurately or completely explained the testimony.   Analysis revealed Movant's DNA was under McCay's fingernails on both hands.   Tr. at 1718-19.   The material from McCay's right hand was consumed in the testing process, but there was sufficient material from his left hand to allow the testing to be replicated.   Tr. at 1720.   Thus, it is not true that the testing could not have been replicated.   Moreover, given that Movant admitted being in a fight with McCay (and thus was in physical contact with him), the Court fails to discern any possible prejudice from trial counsel's failure to raise any objections.

Movant next contends the Court should not have denied his request for production of Rios' Presentence Investigation Report ("PSR"), and implies counsel should have appealed the Order denying the request.   See Order dated December 6, 2006.   As the Court explained, the PSR was a document prepared by the Probation Officer, who is an agent of the Court and not of the United States Attorney.   Therefore, the PSR is not subject to Brady and its disclosure was not required.   The failure to appeal this issue did not violate Strickland.

Finally, Movant complains the Court permitted three FBI agents to sit at the prosecution's table.   First, the Record reflects that two agents were permitted to sit at the prosecution's table.   Tr. at 3, 24.   The Court was within its discretion to permit both agents to sit at counsel table.   E.g., United States v. Sykes, 977 F.2d 1242, 1245 (8th Cir. 1992); Hampton v. Kroger Co., 618 F.2d 498, 499 n.3 (8th Cir. 1980) (per curiam); see also Breneman v. Kennecott Corp., 799 F.2d 470, 474 (9th Cir. 1986) (citing cases). Counsel could reasonably decide not to appeal this discretionary decision, given that it had no effect on the trial's fairness.

### 5.   Prosecutorial Misconduct

This claim has two components, both of which present nothing for consideration. The first component alleges the Government gave evidence to witnesses, but provides no detail or explanation.   The second component discusses cumulative error, and incorporates issues that are dealt with elsewhere in this Order.   An argument predicated on the cumulative mistakes of counsel is not cognizable.   E.g., Middleton v. Roper, 455 F.3d 838, 851 (8th Cir. 2006), cert. denied, 549 U.S. 1134 (2007).

### 6.   Challenges to Eighth Circuit's Rulings

Movant contends the Eighth Circuit erroneously concluded that certain errors were harmless.   See Sandstrom, 594 F.3d at 646-49.   It is not the province of this Court to review decisions from the Court of Appeals.

## 7. First Amendment

Movant argues that his First Amendment rights were violated because he was charged with a "hate crime" for using racially derogatory words.   This is not a proper characterization of events: he was charged with a crime that, as one of its elements, required proof that the defendants acted based on the victim's race.   Movant's statements were used to show that he acted with the requisite motivation.   To the extent he argues that his motivation was protected by the First Amendment, this argument is simply wrong: a person's intent or motive is frequently (and properly) a consideration in determining whether actions are criminal or otherwise punishable.   In short, Movant was not convicted for the words he used; rather, his words were proof of his intent and motive.

## 8. Ineffective Assistance of Counsel

In large measure, Movant's arguments under this heading generally allege his attorneys were ineffective in failing to raise the issues discussed above.   The Court interprets these arguments as Movant's attempt to overcome the procedural bar arising from counsel's failure to raise the appropriate objections or failing to raise the issues on appeal.   See pages 4-5, *supra*.

There are some additional issues raised under this heading.   He faults his attorneys for not conducting additional testing of the DNA evidence, but does not explain how this failure prejudiced him – particularly when, as stated earlier, Movant did not deny being present at the scene or being involved in a physical altercation with McCay.   He contends his attorneys failed to investigate and interview witnesses, but does not identify the lines of investigation or witnesses that were ignored or the information that would have been gleaned.   He complains that his attorney did not seek to suppress the firearms, but presents no basis for any such argument to be made.   He faults counsel for failing to challenge the inclusion of a juror who was related to an Assistant United States Attorney, but the Record only reflects the juror in question shared a last name with the attorney in question.   On his questionnaire the juror checked boxes answering "no" to

Question Number 50, which asked if he or anyone close to him ever worked for or associated with a prosecuting attorney's office, a U.S. Attorney's Office, a public defender's office, or any other lawyer or law office.

Movant contends his attorney would not let him testify at trial, but the Record demonstrates this claim is false: Movant knew the decision whether to testify was his to make and not his attorneys'.   Tr. at 1804-05, 1883-84.   Movant's last argument related to counsel is that they failed to object to the misjoinder of multiple gun charges.   His argument is not clear, but it appears that he is arguing that only one gun crime was permissible because there was only one attack on McCay.   This argument was presented to the Court of Appeals and was rejected, <u>Sandstrom</u>, 594 F.3d at 654-59, so Movant cannot claim that his attorneys were ineffective for failing to raise the argument.

Movant's final arguments under this heading relate to rulings and decisions made in the context of this postconviction proceeding.   These issues would not entitle him to postconviction relief and there is no reason for the Court to revisit these rulings.   To the extent Movant seeks reconsideration of those decisions, the request is denied.

## III.   CONCLUSION

For these reasons, the motion for postconviction relief is denied.   The Clerk of Court is directed to mail a copy of this Order to:

Gary Eye
Reg. No. 18593-045
USP Pollock
P.O. Box 2099
Pollock, Louisiana 71467-2099

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: May 22, 2013                           UNITED STATES DISTRICT COURT